IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

VINCENT J. COLEMAN                                                              PLAINTIFF

v.                                      Civil No. 4:18-cv-04151

SERGEANT GRIFFIE, Miller County
Detention Center ("MCDC"); OFFICER
PATTERSON, MCDC; WARDEN WALKER,
MCDC; CAPTAIN ADAMS, MCDC;
OFFICER HENDERSON, MCDC; OFFICER POOLE,
MCD; OFFICER RICHARDSON, MCDC;
And SHERIFF RUNION, Miller County, Arkansas                  DEFENDANTS

**ORDER**

This is a civil rights action filed by Plaintiff Vincent J. Coleman pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. The case is before the Court for preservice screening under the provisions of the Prison Litigation Reform Act ("PLRA"). Pursuant to 28 U.S.C. § 1915A, the Court has the obligation to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

**I. BACKGROUND**

Plaintiff filed his Complaint on November 1, 2018. (ECF No. 1). His application to proceed *in forma pauperis* ("IFP") was granted the same day. (ECF No. 3). Plaintiff is currently incarcerated in the Miller County Detention Center ("MCDC") awaiting trial on pending criminal charges and serving a sentence as a result of a judgment of conviction. (ECF No. 1, p. 3). Plaintiff sets forth five claims in his Complaint. However, many allegations in these claims overlap and are repeated against various defendants.

1

Plaintiff describes Claim 1 as "Use of Offensive words or actions – Protected Class – Toward an Offender Mistreatment of offenders." He alleges on October 1, 2018:

> Griffie and other officers conducted a cell search on . . . [other inmates] myself. Aimed guns in our face, which by law, 7 feet or more is legal distance to use on inmates. When I informed this info. Sgt. Griffie handled the situation unprofessional calling me nigga, using other obscene gestures, threats saying he will pop a cap in my ass…offensive words and threats or (actions) toward me while I was handcuffed facing toward the wall. Left me in a state of shock and fear. Fearing that my life/safety of well being was actually in danger . . . .

(ECF No. 1, pp. 5-6).

As for Claim 2, Plaintiff states: "Use of excessive or unnecessary force – Non-Provoked- without serious injuries." *Id.* at 7. Plaintiff repeats the allegations set forth in Claim 1 relating to the incident on October 1, 2018, but clarifies that the "guns" pointed in his face were "pepper ball guns aimed in our face at a distance less than 7 feet away that could of caused serious injuries if they would've shot . . . none of us were showing any sign of aggression . . . ." Plaintiff alleges this incident caused him "loss of sleep, paranoia, dis-trust in authority . . . ." *Id.* at 8. He claims that Defendants Griffie, Henderson, Poole, Richardson and Patterson were the officers involved in pointing the pepper ball guns toward him.

In Claim 3, Plaintiff alleges: "Mistreatment of offenders, Denial of medical care, Harassing or Retaliating against another individual." *Id.* at 9. Again, Plaintiff refers to the incident on October 1, 2018, and states that the grievance he filed concerning the incident "was marked as non-appealable. Stating it was not a legal concern . . . I feel this is a cover up made by the captain . . . ." *Id.* Plaintiff then goes on to set forth his disapproval of the grievance procedure at the MCDC and how various defendants inadequately responded or failed to respond to his grievances. He states "I feel the grievance system here is not meant for our best interest of safety

2

and well being. And constantly puts our well being in danger . . . ." He also alleges he sent a medical request on October 17, 2018 stating:

> I can't sleep at night, waking up at the sound of keys and the opening of doors only at fear thinking something is going to happen to me. This feeling of fear didn't start until after the incident that occurred on Oct. 1 . . . .
> Response by Capt. G. Adams 10-23-18 . . . . I will arrange for you to be placed on P.C. to ease your mind. I feel this is further evidence of him trying to cover this incident up, also denying me medical care.
> On 10-24-18 Capt. Adams put me on lockdown. . . . I feel this is Harassing or Retaliating.

*Id.* at 12.

Although Plaintiff describes Claims 4 and 5 as "Mistreatment of Offenders," he simply restates his frustration with and complaints about the MCDC's grievance procedure that he set forth in Claim 3 and identifies Warden Walker and Sheriff Runion as the Defendants responsible for the procedure.

Plaintiff is suing Defendants in their individual and official capacities. He is seeking compensatory and punitive damages. (ECF No. 1, p. 13).

## II. APPLICABLE LAW

Under the PLRA, the Court is obligated to screen the case prior to service of process being issued. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted; or, (2) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded . . . to less

3

stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). However, a *pro se* Plaintiff must allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

### III. DISCUSSION

Plaintiff alleges his constitutional rights were violated when defendants: 1) used offensive words and gestures towards him; 2) used excessive force against him; 3) failed to properly respond to his grievances; 4) denied him medical care; and 5) retaliated against him.

#### A. Verbal Threats and Name Calling

Plaintiff's allegation that Defendants Griffie, Henderson, Poole, Richardson and Patterson used offensive language and verbally threatened him is frivolous. "Verbal threats do not constitute a constitutional violation." *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985). Similarly, taunts, name calling, and the use of offensive language does not state a claim of constitutional dimension. *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (inmate's claims of general harassment and of verbal harassment were not actionable under § 1983); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) (verbal threats and abuse by jail officials did not rise to the level of a constitutional violation); *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985) (use of racially offensive language in dealing with a prisoner does not, by itself, state a claim). Accordingly, Plaintiff's claim regarding the use of verbal threats and name calling is dismissed.

#### B. Excessive Force

Plaintiff alleges that Defendants Griffie, Henderson, Poole, Richardson and Patterson used excessive force against him when they pointed pepper ball guns at him from less than seven (7) feet away when there was no threat or provocation from any inmate. Plaintiff claims he could

have suffered substantial injuries if the guns had been fired. He also states because of this incident he has lost sleep and is now distrustful of MCDC officers.

In evaluating an excessive force claim under the Eighth Amendment, the relevant inquiry is whether the force used was applied in a good-faith effort to maintain or restore discipline or was used to maliciously and sadistically cause harm. *See U.S. v. Miller,* 477 F.3d 644, 647 (8th Cir. 2007). In deciding whether a use of force was reasonable, the Court is required to consider whether there was an objective need for force, the relationship between the need and the amount of force used, the threat reasonably perceived by correctional officers, the efforts by the officers to temper the severity of the forceful response, and the extent of the inmate's injuries. *See Johnson v. Hamilton,* 452 F.3d 967, 972 (8th Cir. 2006) (citation omitted).

"[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action." *See Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9-10 (internal quotation marks omitted). An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid claim for excessive force. *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010).

Here, Plaintiff concedes that he was not physically touched by any defendant. Even accepting as true Plaintiff's allegations that there was no threat or provocation from any inmate, the threat of using pepper spray on Plaintiff may at most have been unprofessional, but this conduct does not rise to the level of a constitutional violation. *See Askew v. Millerd*, 191 F.3d 953, 958 (8th Cir. 1999) (providing that: "Section 1983 is intended to remedy egregious conduct, and not

5

every assault or battery which violates state law will create liability under it."). Therefore, Plaintiff has failed to state a claim for excessive force.

### C. Failure to Respond to Grievances

Plaintiff also alleges his constitutional rights were violated when his grievances setting forth complaints about the conduct of several of the defendants on October 1, 2018, was labeled as "non-appealable" and found not to be a "legal matter." "Inmates do not have a constitutionally protected right to a grievance procedure. Because a state grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the grievance procedure is not actionable under § 1983." *Lombolt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (denial of grievances does not state a substantive constitutional claim). "Rather, prison inmates have a constitutional right to petition the government for redress through a right of access to the courts." *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991). Within a month after filing grievances relating to the incident on October 1, 2018, Plaintiff filed the instant lawsuit. Accordingly, Plaintiff fails to state a claim relating to inadequate responses to grievances.

### D. Denial of Medical Care

Plaintiff alleges he submitted a medical request on October 17, 2018, indicating he was having trouble sleeping because he was being awakened at night by the sound of keys and opening doors. Plaintiff states in his Complaint that on October 23, 2018, Defendant Adams responded to Plaintiff's request and said, "I will arrange for you to be placed on P.C. to ease your mind." (ECF No. 1, p. 12). Plaintiff claims that this statement establishes that he was denied medical care by Defendant Adams.

The Eighth Amendment's prohibition against cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge Cty*, 684 F.3d

808, 817 (8th Cir. 2012). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)). In order to show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

To establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Corr. Med. Servs*, 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted). Deliberate indifference may be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976). However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. Cnty of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009).

Here, Plaintiff submitted one request stating he was not able to sleep because he was being awakened by the sound of keys and the opening of doors during the night in the MCDC. First, the Court finds that Plaintiff's medical request does not involve an objectively serious medical need. There is no evidence Plaintiff saw a doctor for his alleged loss of sleep or that he had been diagnosed as requiring treatment for the issue. Plaintiff stated that the cause of his loss of sleep in

7

his Complaint was "noises at night" and thus Plaintiff did not attribute the loss of sleep to a medical issue. Second, the Court finds that merely losing sleep because of noise, without naming any other symptoms, is not a serious medical condition that would have been obvious to a lay person. Accordingly, Plaintiff has failed to state a claim based on denial of medical care.

### E. Retaliation

Plaintiff alleges Defendant Adams retaliated against him for filing a medical request when he moved Plaintiff to "lockdown" to help him with his claim that he was having difficulty sleeping.[1]

In general, "[c]onduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001) (citing *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990)). The retaliatory conduct itself need not be a constitutional violation to be actionable. Additionally, there is no independent injury requirement when retaliatory conduct is involved. *See Dixon v. Brown*, 38 F.3d 379, 380 (8th Cir. 1994). To prevail on his retaliation claim, Plaintiff must demonstrate: (1) he engaged in protected activity; (2) Defendants responded with adverse action that would "'chill a person of ordinary firmness' from continuing in the activity;" and (3) the adverse action was motivated at least in part by exercise of the protected action. *See L.L. Nelson Enterprise Inc. v. County of St. Louis, Mo.,* 673 F.3d 799, 807-8 (8th Cir. 2012) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).

There is no question that Plaintiff engaged in protected First Amendment activity when he submitted a medical request [or grievance] on October 17, 2018. *See Dixon v. Brown*, 38 F.3d 379 (8th Cir. 1994). Plaintiff claims that Defendant Adams told him on October 23, 2018, that he

---

[1] It is not clear to the Court from Plaintiff's Complaint if lockdown is the same as P.C. (protective custody).

would move Plaintiff to "P.C." to ease his mind and the following day Plaintiff was placed in lockdown. Plaintiff then states, "I believe this is harassing or retaliating." The Court finds that Plaintiff has stated sufficient facts to support a claim. Accordingly, Plaintiff's claim for retaliation shall proceed.

### F. Official Capacity Claims

Section 1983 provides a federal cause of action for the deprivation, under color of state law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a defendant acted under color of state law and that the defendant violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999). Under section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. *Gorman v. Bartch,* 152 F.3d 907, 914 (8th Cir. 1998). With respect to official capacity claims, they are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). In the present case, Plaintiff's official capacity claims against Defendants are treated as claims against Miller County. *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Miller County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted).

9

Plaintiff's allegations concerning official capacity merely consist of a recitation of the ways he believes his constitutional rights were violated. His claims do not suggest the existence of any policy, custom or practice of Miller County. Thus, Plaintiff has failed to state a claim against Defendants in their official capacity.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's individual claims against Defendants Griffie, Officer Patterson, Warden Walker, Officer Henderson, Officer Poole, Officer Richardson, and Sheriff Runion are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i-iii). Further, all official capacity claims are **DISMISSED WITHOUT PREJUDICE**. Plaintiff's individual claims against Defendant Adams in his personal capacity based on verbal threats/offensive gestures, excessive force, inadequate responses to grievances, and denial of medical care are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i-iii). Plaintiff's claim of retaliation against Defendant Adams in his personal capacity shall proceed.

**IT IS SO ORDERED**, this 15th day of January, 2019.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge