IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

VINCENT J. COLEMAN                                                    PLAINTIFF

v.                                   Civil No. 4:18-cv-04151

CAPTAIN ADAMS, Miller County
Detention Center                                                     DEFENDANTS

## REPORT AND RECOMMENDATION

This is a civil rights action filed *pro se* by Plaintiff, Vincent J. Coleman, under 42 U.S.C.

§ 1983.   Before the Court is a Motion for Summary Judgment filed by Defendant Adams.  (ECF

No. 16).  Plaintiff has filed a Response. [1]  (ECF No. 21).  Pursuant to the provisions of 28 U.S.C.

§ 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District Judge,

referred this case to the undersigned for the purpose of making a Report and Recommendation.

### I. FACTUAL BACKROUND

Plaintiff is currently incarcerated in the Bi-State Detention Center in Texarkana, Texas.

Plaintiff's claims in this action arise from alleged incidents that occurred during his incarceration

in the Miller County Detention Center ("MCDC") in October and November of 2018.

Plaintiff was arrested and booked into the MCDC on June 22, 2018 and remained

incarcerated there until November 16, 2018.  (ECF No. 18-2, p. 2).

On October 2, 2018, Plaintiff submitted an inmate grievance, stating:

BTWN 2:30-2:50, SGT. GRIFFIE AND OTHER OFFICERS CONDUCTED A
CELL SEARCH (8 CELL) ON INMATES MATHIS, STEVENS, ROBINSON,
COLEMAN. AIMED GUNS IN OUR FACE, WHICH BY LAW, 7FEET OR

---

[1]Although the Response appears to contain a notary's stamp, the Court will not consider the pleading in this Report
and Recommendation because it does not contain the language required by 28 U.S.C.A. § 1746 to submit a
sworn/verified declaration - "I declare under (certify, verify, state) under penalty of perjury under the laws of the
United States of America that the foregoing is true and correct.  Executed on (date)."  *See also Spear v. Dayton's*, 733
F.2d 554, 555-56 (8th Cir. 1984) (unverified pleadings are not considered in deciding a motion for summary judgment).

> MORE IS LEGAL DISTANCE TO USE ON IMATE. WHEN I INFORMED THIS INFO. SGT, GRIFFIE HANDLED THE SITUATION UNPROFESSIONAL CALLING ME NIGGA, USING OTHER OBSCENE GESTURES, THREATS SAYING HE WILL POP A CAP IN MY ASS.I FEAR FOR MY LIFE, SAFETY, THIS IS UNPROFESSIONAL OUTRAGEOUS CONDUCT PERFORMED BY GRIFFIE. CALLING VIDEO, AUDIO FOR WITNESS NEED 1983 FORM.

(ECF No. 18-3, p. 13). The initial responding officer stated, "We take allegations such as the one you have made very seriously…disciplinary action will be taken against you if it is found that you have made false allegations. We also want to assure you that if necessary, appropriate measures will be taken to address your concerns." Defendant Adams also responded stating, "We do not provide those forms but I will review the camera for the times listed." *Id.*

On October 7, 2018, Plaintiff submitted an inmate grievance, stating:

> According to ref #3,451,773 grievance.my grievance was marked as non-appealable. stating it was not a legal concern. conditions of care or supervision within the authority at the facility and incidents occurring within the facility that affect you personally, state and federal laws also rules and procedures are legal complaints. i feel this is a cover up made by the captain [Defendant Adams], refer this grievance to warden or sheriff, to reassure me proper measures are being taken on this incident. appl to ref #3,451,773.

(ECF No. 18-3, p. 14). On October 17, 2018, the Admin. G. officer stated, "I have forwarded your request to the appropriate authority." *Id.* On October 22, 2018, Defendant Adams responded, "Don't know why I am being sent a grievance from 10-7 but as to blaming me for covering something up is not appropriate. I called you to my office and spoke about this incident already." *Id.*

On October 17, 2018, Plaintiff submitted the following inmate medical request:

> I can't sleep at night, waking up at the sound of keys and the opening of doors only at fear thinking something is going to happen to me. this feeling of fear didn't start until after the incident that occurred on Oct. 1, happened to me dealing with some of the officer(s) working here. feelin that the safety of my well being is in danger during my stay here at miller county not from myself or other inmates but from the officer(s) employed here. need to talk to a doctor or specialist, asap bout this.

2

(ECF No. 18-3, p. 15).  That same day medical staff responded stating, "I have forwarded your request to Captain Adams concerning your fear for your safety."  Defendant Adams responded on October 23, 2018 stating, "I will arrange for you to be placed on P.C. to ease your mind."  *Id.*

On October 21, 2018, Plaintiff submitted another inmate medical request stating:

Thanks for referring to the captain but he is not certified to handle r talk to me about symptoms I'm having.  lack of sleep, paranoia, fear, dis-trust in authority.  talked to capt. a week ago bout this, he said he was going to call U.S. Marshalls to come talk to me, never talked to them yet.  so I'm asking to talk to someone who is qualified and certified to help me with these symptoms I'm having.

(ECF No. 18-3, p. 16).  In response, medical staffer Nurse Adams noted, "Added to Psych list." *Id.*

On October 24, 2018, Plaintiff was placed in protective custody and an hourly log journal was used to follow his daily activity until he was removed from protective custody on November 2, 2018.  (ECF No. 18-4, pp. 4-6).

On October 27, 2018, Plaintiff was seen by medical staff and a physician for a Mental Health screening.  Plaintiff was given educational materials, referred to Mental Health Services, and advised to notify staff of any changes.  (ECF No. 18-4, pp. 1-3).

On November 1, 2018, Plaintiff filed the instant lawsuit.  (ECF No. 1).   In addition to Defendant Adams, Plaintiff named Sergeant Griffie, Officer Patterson, Warden Walker, Officer Henderson, Officer Poole, Officer Richardson, and Sheriff Runion as Defendants.  On January 16, 2019, the Court dismissed Plaintiff's official capacity claims against all Defendants, including Adams, and the individual capacity claims against all Defendants, based on verbal threats, offensive gestures, excessive force, inadequate responses to grievances and denial of medical care. (ECF No. 8).  As a result, the only issue currently before the Court is Plaintiff's individual capacity

claim against Defendant Adams for retaliation.  Plaintiff alleges Defendant Adams retaliated against him when he placed him in protective custody on October 24, 2018, for filing grievances and medical requests.  (ECF No. 1, p. 12).

On November 16, 2018, Plaintiff was transferred from the MCDC to the Bi-State Detention Center after he requested to be moved because of his issues with Defendant Adams, other MCDC staff, and the lawsuit Plaintiff had filed against them.  (ECF No. 18-6, p. 12).

According to the affidavit of Warden Jeffie Walker and the policy of the MCDC, an inmate may be housed in administrative segregation (also known as protective custody) for security reasons including, but not limited to, "a need to have increased or more frequent supervision over that inmate;… [or] a threat to the inmate's safety or the security of the facility due to expressed or implied conflict with other inmates or staff…"  (ECF Nos. 18-1, p. 3; 18-5, pp. 27-28).

The MCDC also has policies in place regarding the operation of the facility and the treatment of inmates including but not limited to a procedure for filing grievances or complaints.  (ECF No. 18-5, p. 34).  A complaint is defined as "a verbal and/or written communication with staff for informal resolution of an incident, policy, procedure, or condition within the jail which personally/directly affects the inmate."  A grievance is defined as "written communication for formal resolution of an incident, policy, procedure, or condition within the jail which personally affects the inmate filing the grievance.  A grievance can only be made subsequent to filing a written complaint and receiving a written response."  *Id.*

The MCDC's policy and procedure regarding the submission of complaints provides they are first submitted through a kiosk.  (ECF No. 18-5, p. 37). Inmate "requests/concerns/complaints" are reviewed daily (excluding weekends and holidays) and sent to the appropriate person to address.  Complaints are forwarded to the lowest appropriate supervisory level to address and

respond.  *Id.*  The supervisor addressing the complaint is required to deliver a response to the inmate.  Inmates who are unable to resolve a complaint through the procedure using the kiosk are then required to submit a grievance in accordance with the MCDC's grievance procedure.  *Id.*

Within thirty (30) calendar days of receipt of a grievance, the grievance is reviewed and if applicable thoroughly investigated.  (ECF No. 18-5, p. 38).  The investigation results are then provided to the Warden or the Risk Management Officer, in writing.  *Id.*  An inmate may appeal the result of the grievance findings to the Warden by stating they wish to "APPEAL THE FINDINGS ON THE 'INMATE ACKNOWLEGEMENT FORM'".  *Id.* at p. 39.  Following the disposition of the appeal, the Request for Administrative Remedy Form shall be returned to the Risk Management Officer and the case number closed out.  The form is then forwarded to the Lieutenant or Captain for distribution, copies are made for the inmate's classification file, and then delivered to the inmate.  *Id.* at p. 40.

Between July 10, 2018 and October 23, 2018, Plaintiff submitted twelve (12) grievances and five (5) medical requests.  (ECF No. 18-3).  None of the grievances or medical requests related to Plaintiff's placement in protective custody by Defendant Adams.

Plaintiff testified in his deposition Sergeant Griffie did not make any threats towards him or use any racial slurs against him while Plaintiff was in protective custody.  (ECF No. 18-6, p. 26).  Plaintiff also testified while in protective custody Griffie "got to bring us our trays, I've got to ask him to talk to Lieutenants and, I mean…and he never did."  (ECF No. 18-6, p. 38).  Plaintiff also testified he did not feel safe around Sergeant Griffie and he believed Defendant Adams moved him to protective custody so he would be closer to Griffie.  *Id.* at p. 33.

On September 16, 2019, Defendant Adams filed a Motion for Summary Judgment arguing he is entitled to summary judgment because: 1) Plaintiff failed to exhaust his administrative

remedies regarding his claim of retaliation; 2) there is no evidence of retaliation; and 3) Defendant Adams is entitled to qualified immunity. (ECF No. 16). Even though Plaintiff's Response was not verified, the Court will refer to Plaintiff's verified Complaint and his sworn deposition testimony in making its determination on the summary judgment motion.[2]

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing, *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not

---

[2] Plaintiff's verified Complaint is the equivalent of an affidavit for purposes of summary judgment. *Robertson v. Hayti Police Dept.,* 241 F.3d 992 (8th Cir 2001).

adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.  DISCUSSION

### A.  Failure to Exhaust Administrative Remedies

Plaintiff alleges Defendant Adams retaliated against him when he placed him in protective custody after he filed a grievance about MCDC's officers and filed a medical request to see a mental health specialist.  Defendant Adams argues Plaintiff failed to exhaust his administrative remedies before he filed the instant lawsuit and consequently his claim of retaliation is barred.

The Prison Litigation Reform Act ("PLRA") in 42 U.S.C. § 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   Exhaustion is mandatory.  *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002).  In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules."  *Id.* at 218 (internal quotation marks and citation omitted).  The Court stated the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Id.*

The Eighth Circuit has recognized two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures; or (2) when the officials themselves fail to comply with the grievance procedures.  *See Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir. 2005) (citing *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001) (explaining a

prisoner is only required to exhaust those administrative remedies that are available and any remedies that prison officials prevent a prisoner from utilizing are not considered available)).

There is no dispute the MCDC had a grievance procedure in place for inmates to use at the time the incidents occurred which Plaintiff claims resulted in a violation of his rights.   (ECF No. 18-5, pp. 37-42).  The summary judgment record also confirms Plaintiff did not file any grievance related to his placement in protective custody by Defendant Adams before the instant lawsuit was filed.  (ECF No. 18-6, p. 38).  Moreover, Plaintiff has not alleged Defendant Adams prevented him from utilizing the grievance procedure or failed to comply with the procedure itself as it related to Plaintiff's placement in protective custody.  In addition, Plaintiff admits while he was in protective custody he had access to the kiosk to submit grievances and medical requests but he "just talked to the staff and that's about it". (ECF No. 18-6, pp. 34, 38).

Speaking to staff about his concerns about placement in protective custody did not satisfy the requirements of the MCDC's grievance procedure.  Accordingly, I recommend Plaintiff's claim of retaliation against Defendant Adams be dismissed for failure to exhaust his administrative remedies.

### B.  Retaliation

Even if Plaintiff had exhausted his administrative remedies prior to filing this lawsuit, as discussed below, the Court finds Plaintiff's claim for retaliation also fails on the merits.  The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity. *Dixon v. Brown*, 38 F.3d 379 (8th Cir. 1994).  Generally, "[c]onduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001) (citing *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990)).  The retaliatory conduct itself

need not be a constitutional violation to be actionable.  Additionally, there is no independent injury requirement when retaliatory conduct is involved.  *See Dixon*, 38 F.3d at 380 (8th Cir. 1994).  To prevail on his retaliation claim, Plaintiff must demonstrate: (1) he engaged in protected activity; (2) Defendants responded with adverse action that would "'chill a person of ordinary firmness' from continuing in the activity;" and (3) the adverse action was motivated at least in part by exercise of the protected action.  *See L.L. Nelson Enterprise Inc. v. County of St. Louis, Mo.,* 673 F.3d 799, 807-808 (8th Cir. 2012) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).

Although, there is no question Plaintiff engaged in a protected activity when he submitted grievances and medical requests, Plaintiff's claim he was placed in protective custody in retaliation for doing so is contrary to the facts.  The summary judgment record establishes Plaintiff filed a grievance on October 2, 2018 concerning threats he received from Sergeant Griffie and other MCDC officers during a search of his cell on October 1, 2018.  Plaintiff admits no disciplinary action was taken against him for filing this grievance.  (ECF No. 18-6, p. 21).  He also admits he spoke with Defendant Adams in person about his concerns after he filed this grievance.  *Id.* at pp. 25, 28.

On October 23, 2018, Plaintiff filed a medical request complaining he couldn't sleep because he was "waking up at the sound of keys and the opening of doors only at fear something is going to happen to me" at the hands of MCDC officers.  (ECF No. 18-3, p. 15).  In this request Plaintiff also asked to speak to a doctor about his feelings of fear.  In response, an MCDC nurse put him on the list to be seen by a mental health professional and she contacted Defendant Adams about Plaintiff's concern for his safety.  Defendant Adams then told Plaintiff he would move him to protective custody to "ease his mind".  Moving Plaintiff to protective custody was consistent with the MCDC's policy to place an inmate in protective custody "due to an express or implied

9

conflict with other inmates or staff". Plaintiff admits he did not object to being moved to protective custody. (ECF No. 18-6, pp. 33-34). During the week Plaintiff was in protective custody, the record reflects he had access to the kiosk to submit medical requests and grievances, his daily activity was monitored and logged into a chart, and he received mental health counseling. Even though Plaintiff admits he was not threatened by any MCDC officer during his time in protective custody, he claims he didn't feel safe because Sergeant Griffie was near him.

Plaintiff has not presented any summary judgment evidence to support his retaliation claim. *See Meuir v. Greene County Jail Employees.,* 487 F.3d 1115, 1119 (8th Cir. 2007) ("Merely alleging that an act was retaliatory is insufficient."). Plaintiff only makes conclusory allegations that he believes Defendant Adams moved him to protective custody to put him close to Sergeant Griffie without any factual support. This is insufficient as a matter of law. *See Neubauer v. FedEx Corp.,* 849 F.3d 400, 404 (8th Cir. 2017) (a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do"); s*ee also Murphy v. Mo. Dept. of Corr.,* 769 F.2d 502, 503 n. 1 (8th Cir. 1985) (holding an inmate bears a heavy evidentiary burden in establishing a prima facie retaliation case).

Accordingly, the Court finds Plaintiff's claim for retaliation fails as a matter of law and recommends Defendant Adams be granted summary judgment.[3]

## IV. CONCLUSION

For the reasons stated above, I recommend Defendant Adam's Motion for Summary Judgment (ECF No. 16) be **GRANTED** and Plaintiff's retaliation claim be **DISMISSED WITH PREJUDICE**.

---

[3] Because the Court has found Defendant Adams did not violate Plaintiff's constitutional rights it is not necessary to address the issue of qualified immunity.

The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 18th day of December 2019.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE